SUCCESS CENTERS, INC. *v.* HUNTINGTON
LEARNING CENTERS, INC., ET AL.
(14406)

CALLAHAN, GLASS, BORDEN, BERDON and F.X. HENNESSY, Js.

Argued June 4—decision released September 1, 1992

*Gregory T. D'Auria,* with whom was *Bruce G. Mac-Dermid,* for the appellant (plaintiff).

*Charles F. Stelljes,* for the appellees (defendants).

GLASS, J. The sole issue in this certified appeal is whether the Appellate Court properly dismissed the plaintiff's appeal on the ground that it was not from a final judgment. The plaintiff, Success Centers, Inc., commenced this action in the Superior Court against the named defendant, Huntington Learning Centers, Inc., and others,[1] alleging a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.,[2] and seeking damages and

---

[1] The plaintiff also named as defendants Raymond Huntington, founder and director of the corporate defendant, and Eileen Huntington, president of the corporate defendant.

[2] We note here an apparent error in the plaintiff's complaint and brief on appeal. In citing CUTPA, the plaintiff refers to General Statutes § 42-110*d* et seq., instead of § 42-110a et seq. General Statutes § 42-110b of CUTPA provides: "(a) No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

"(b) It is the intent of the legislature that in construing subsection (a) of this section, the commissioner and the courts of this state shall be guided

temporary injunctive relief to prevent the enforcement of certain franchise agreements between the parties. Upon motion of the defendants pursuant to General Statutes § 52-409,[3] the trial court ordered the parties to proceed with arbitration, as provided in their franchise agreements. The plaintiff appealed to the Appellate Court, which, upon motion of the defendants, dismissed the appeal for lack of a final judgment. We granted certification of the plaintiff's appeal and now affirm the judgment of the Appellate Court.

The facts relevant to the disposition of this appeal are as follows. The plaintiff alleged in its complaint that, in 1988, it entered into franchise agreements with the defendants for the purchase of franchised learning centers in Glastonbury and Farmington. The plaintiff alleged further that, "[s]ubsequent to entering into said franchise agreements, [it] ascertained that the methods employed by the defendants are invalid and improper in that inter alia they prescribe remedial reading services for each and every student who is administered

by interpretations given by the Federal Trade Commission and the federal courts to Section 5 (a) (1) of the Federal Trade Commission Act (15 U.S.C. 45 (a) (1)), as from time to time amended.

"(c) The commissioner may, in accordance with chapter 54, establish by regulation, acts, practices or methods which shall be deemed to be unfair or deceptive in violation of subsection (a) of this section. Such regulations shall not be inconsistent with the rules, regulations and decisions of the federal trade commission and the federal courts in interpreting the provisions of the Federal Trade Commission Act.

"(d) It is the intention of the legislature that this chapter be remedial and be so construed."

[3] "[General Statutes] Sec. 52-409. STAY OF PROCEEDINGS IN COURT. If any action for legal or equitable relief or other proceeding is brought by any party to a written agreement to arbitrate, the court in which the action or proceeding is pending, upon being satisfied that any issue involved in the action or proceeding is referable to arbitration under the agreement, shall, on motion of any party to the arbitration agreement, stay the action or proceeding until an arbitration has been had in compliance with the agreement, provided the person making application for the stay shall be ready and willing to proceed with the arbitration."

the diagnostic tests irrespective of whether such student actually requires such remedial reading." The plaintiff asserted that the alleged practices violate CUTPA and Connecticut public policy.

Prior to the commencement of this action, the defendants had demanded arbitration pursuant to the provisions of the franchise agreements in order to collect royalties that they claimed the plaintiff owed them for the operation of the franchises. The parties had selected an arbitrator and had scheduled an arbitration hearing. The defendants, in their answer and special defense to the plaintiff's complaint, requested that the trial court enter an order pursuant to General Statutes § 52-410,[4] directing the plaintiff to proceed with arbitration.[5]

---

[4] "[General Statutes] Sec. 52-410. APPLICATION FOR COURT ORDER TO PROCEED WITH ARBITRATION. (a) A party to a written agreement for arbitration claiming the neglect or refusal of another to proceed with an arbitration thereunder may make application to the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, to any judge thereof, for an order directing the parties to proceed with the arbitration in compliance with their agreement. The application shall be by writ of summons and complaint, served in the manner provided by law.

"(b) The complaint may be in the following form: '1. On . . . . , 19.., the plaintiff and the defendant entered into a written agreement for arbitration, of which exhibit A, hereto attached, is a copy. 2. The defendant has neglected and refused to perform the agreement for arbitration, although the plaintiff is ready and willing to perform the agreement. The plaintiff claims an order directing the defendant to proceed with an arbitration in compliance therewith.'.

"(c) The parties shall be considered as at issue on the allegations of the complaint unless the defendant files answer thereto within five days from the return day, and the court or judge shall hear the matter either at a short calendar session, or as a privileged case, or otherwise, in order to dispose of the case with the least possible delay, and shall either grant the order or deny the application, according to the rights of the parties."

[5] The defendants did not make the application for the requested order under General Statutes § 52-410 by writ of summons and complaint, as provided in that statute. See footnote 4, supra. Thus, it appears that the trial court never ruled on the defendants' procedurally defective request for a § 52-410 order.

The defendants separately moved the trial court, pursuant to § 52-409, for an order to stay the pending action and to proceed with arbitration. The trial court held a hearing on the defendants' motion and, thereafter, ordered the parties to proceed with arbitration, as provided in their contract. In its ruling on the defendants' § 52-409 motion, the trial court also denied the plaintiff's motion for a temporary injunction.[6]

The plaintiff appealed to the Appellate Court. The defendants moved to dismiss the appeal for lack of a final judgment, claiming that the trial court's order merely postponed the disposition of the underlying action. The Appellate Court granted the defendants' motion to dismiss the plaintiff's appeal. We granted the plaintiff's petition for certification to appeal limited to the following question: "Did the Appellate Court properly dismiss for lack of a final judgment the plaintiff's appeal from the trial court's order compelling arbitration?" *Success Centers, Inc.* v. *Huntington Learning Centers, Inc.*, 220 Conn. 930, 599 A.2d 382 (1991). We conclude that the Appellate Court's judgment dismissing the plaintiff's appeal was proper.

The plaintiff claims that the Appellate Court improperly dismissed its appeal for lack of a final judgment. Although the plaintiff concedes that the trial court's § 52-409 order was interlocutory, the plaintiff urges this court to analyze the appealability of a § 52-409 order under the test set forth in *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983). The plaintiff contends that

---

[6] The plaintiff filed a motion with the trial court for reargument and reconsideration. After hearing oral argument on the plaintiff's motion, the trial court issued a supplemental memorandum of decision providing a rationale for its prior order. On November 22, 1991, the plaintiff filed with this court an amended designation of pleadings in the record, listing the trial court's supplemental memorandum of decision, dated October 11, 1991. It appears, however, that the plaintiff failed to include the October 11, 1991 memorandum of decision in the appellate record.

the trial court's interlocutory order under § 52-409 terminates a separate and distinct proceeding and, thus, is immediately appealable. Id. Alternatively, the plaintiff argues that the trial court's order meets the second test under *Curcio*, in that it "so concludes the rights of the parties that further proceedings cannot affect them." Id. We are persuaded that the trial court's order does not meet either exception set forth in *Curcio*, and, therefore, that the plaintiff must await completion of the arbitration proceedings before it is entitled to appellate review of its claim that the issues raised in its complaint are not arbitrable.[7]

The plaintiff asserts at the outset that the case law regarding the appealability of orders under §§ 52-409 and 52-410 is inconsistent, despite the fact that, under either statute, the trial court must decide the issue of arbitrability. The plaintiff criticizes this court's divergent treatment of § 52-409 and § 52-410 orders, claiming that it "has evolved on its own, leaving litigants and lower courts to guess at the distinguishing elements." In support of its criticism, the plaintiff refers to the conclusion of certain commentators that "[i]t is difficult to see why these statutes should be treated differently." W. Moller & W. Horton, Connecticut Practice, Practice Book Annotated, Supreme Court and Appellate Court Rules and Forms (1992) § 4000, p. 58.[8]

---

[7] In addition to addressing the certified issue, the defendants argue in their brief that federal law mandates the arbitration of CUTPA violations. We do not reach this claim because it is outside the certified issue and because the defendants did not propose it as an alternate ground for affirming the judgment of the Appellate Court. See Practice Book §§ 4013 (a) (1) (A) and 4140.

[8] We note here the explanation offered by another commentator concerning the differential treatment of General Statutes § 52-409 and § 52-410 orders with respect to appealability. "There are two statutory procedures under which private arbitration can be compelled. Under one method [General Statutes § 52-410 (a)], a party to an arbitration agreement can apply to the court to direct the opposing party to proceed with arbitration. Because an application for an order to compel arbitration is a separate and distinct

We disagree with the plaintiff's premise that the disparate treatment of orders under the two statutes is without logical foundation.[9]

Under § 52-409, when an action is brought in the trial court by a party to a written agreement that includes provisions for arbitration, and the trial court is satisfied that an issue involved in the action is arbitrable, the court, on motion of any party to the agreement, shall stay the action until arbitration has been had in compliance with the agreement. See footnote 3, supra. As a condition precedent to the issuance of a stay order by the trial court, the moving party must be ready and willing to proceed with arbitration. The authority of the court to stay a pending action under § 52-409 thus provides an incentive to participate to the party reluc-

proceeding, an order directing a party to arbitrate terminates that proceeding and is deemed a final judgment and appealable. For the same reason, an order refusing to direct arbitration would also seem final and appealable.

"The other procedure is employed when a party to an arbitration agreement has initiated a lawsuit instead of arbitrating. In that situation, the defendant may move the court [under General Statutes § 52-409] to stay the lawsuit and to direct the plaintiff to arbitrate. Although such a proceeding looks like the mirror image of a direct application to compel arbitration, Connecticut has viewed it differently for purposes of appeal. The court has held that an order staying a proceeding and ordering arbitration is not a final judgment and not appealable." C. Tait, Connecticut Appellate Practice and Procedure (1989) § 2.25, pp. 96.1–97.

[9] We cannot, however, disclaim complete responsibility for augmenting the confusion about the distinction between the two statutes. Since General Statutes § 52-409 only provides for a litigant to seek an order from the trial court to "stay the action or proceeding until an arbitration has been had in compliance with the agreement," our statements in *Schwarzschild* v. *Martin,* 191 Conn. 316, 323–24, 464 A.2d 774 (1983), referring to a § 52-409 order *to compel* arbitration and a § 52-409 order *requiring* arbitration, are inaccurate. A § 52-409 order does not *compel* arbitration; rather, it merely stays the pending civil action until arbitration has been completed. We note that in the present case, the plaintiff has not challenged the wording of the trial court's ruling, made pursuant to § 52-409, that "[t]he parties are *ordered* to proceed with arbitration under their contract." (Emphasis added.)

tant to engage in arbitration. On the other hand, the trial court's denial of a § 52-409 motion leaves the parties where the court found them, requiring them to proceed with the pending litigation.

The trial court's authority under § 52-410 is quite different from its authority under § 52-409. Section 52-410 creates an independent action that can be instituted only by a properly served writ of summons and complaint. See footnote 4, supra. No civil action need be pending between the parties for a § 52-410 action to be commenced. Cf. *KND Corporation* v. *Hartcom, Inc.,* 5 Conn. App. 333, 336–37, 497 A.2d 1038 (1985) ("[i]t would make little sense to require a party being sued to initiate [a § 52-410] action"). Pursuant to § 52-410, a party to a written agreement for arbitration claiming the neglect or refusal of another to proceed with arbitration can apply to the trial court for an "order directing the parties to proceed with the arbitration in compliance with their agreement."

We are persuaded that §§ 52-409 and 52-410 serve distinct functions. Section 52-409 provides relief when a party to a contract that contains an arbitration clause desires arbitration of a dispute, and the other party, instead of proceeding with arbitration, institutes a civil action to resolve the dispute. The party desiring arbitration can then seek a *stay* of the civil action. In contrast, § 52-410 comes into play when no action is pending between the parties, the parties have a contract providing for arbitration, and the parties are unable to agree about the arbitrability of the dispute. In that case, one of the parties may apply to the trial court, in accordance with the distinct statutory procedure provided by § 52-410, for an order *directing the parties to proceed* with arbitration.

In either case, in granting or denying a stay under § 52-409, or in granting or denying an order directing

the parties to proceed with arbitration under § 52-410, the trial court must determine whether the contract between the parties provides for arbitration. Because, however, a civil action must be pending for a § 52-409 order to be issued, we have held that such an order is interlocutory and, therefore, not appealable. *Schwarzschild* v. *Martin,* 191 Conn. 316, 323–24, 464 A.2d 774 (1983); *Gores* v. *Rosenthal,* 148 Conn. 218, 169 A.2d 639 (1961); see also *KND Corporation* v. *Hartcom, Inc.,* supra, 337. Section 52-410, on the other hand, allows a party to an arbitration agreement to commence an *independent* action in the Superior Court to compel arbitration when no civil action is pending between the parties. The trial court's decision in a § 52-410 action, therefore, terminates the action between the parties. Thus, we have construed a court order made pursuant to § 52-410 as a final order from which either party to the agreement may appeal. *Dewart* v. *Northeastern Gas Transmission Co.,* 139 Conn. 512, 514–15, 95 A.2d 381 (1953); see also *Quinn* v. *Middlesex Ins. Co.,* 16 Conn. App. 209, 211, 547 A.2d 95, cert. denied, 209 Conn. 817, 550 A.2d 1085 (1988).

The plaintiff properly treats the trial court's order in this case as having been issued pursuant to § 52-409 and concedes that, as such, it is an interlocutory order. The plaintiff argues, however, that the inquiry does not end there and that this court should analyze the trial court's § 52-409 order under the test established in *State* v. *Curcio,* 191 Conn. 27, 31, 463 A.2d 566 (1983). In *Curcio,* we stated that "[a]n otherwise interlocutory order is appealable in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them." Id. Therefore, we must determine whether the interlocutory order of the trial court in this case, made pursuant to § 52-409, fits either of these

two exceptions. Our application of the two exceptions set forth in *Curcio* to the trial court's order persuades us that the Appellate Court correctly concluded that the order was not immediately appealable.

We begin by examining the arbitration provisions of the franchise agreements between the parties to ascertain the scope of arbitration under the agreements.[10] Pursuant to the franchise agreements, the parties agreed that "[a]ny controversy or claim arising out of or relating to this Agreement, or any breach thereof, including, without limitation, any claim that this Agreement, or any part thereof, is invalid, illegal or otherwise voidable or void, shall be submitted to final and binding arbitration . . . ." See footnote 10. In bringing this action in the Superior Court, the plaintiff sought an adjudication of whether the franchise agreements violated CUTPA and Connecticut public policy.

---

[10] Section XXI of the parties' franchise agreements provided:
"XXI. ARBITRATION

21.01 Arbitration: Any controversy or claim arising out of or relating to this Agreement, or any breach thereof, including, without limitation, any claim that this Agreement, or any part thereof, is invalid, illegal or otherwise voidable or void, shall be submitted to final and binding arbitration before, and in accordance with, the Commercial Rules of the American Arbitration Association to be conducted by the American Arbitration Association in the municipality nearest the home office of Company, unless the parties otherwise agree in writing. The arbitrator may not stay the effectiveness of any pending termination, assess punitive, speculative or exemplary damages or make an award which extends, modifies or suspends any provision of this Agreement. Judgment upon any award shall be binding, and shall be entered in a court of competent jurisdiction; provided, however that this article shall not be construed to limit any rights which Franchisor may have to apply to any court of competent jurisdiction for injunctive or similar provisional relief. The substantive law of the State of New Jersey shall be applied by the arbitrators, and this requirement shall be deemed jurisdictional and interpreted as an agreement by both parties to appear and submit to such jurisdiction. This arbitration provision shall be deemed self-executing, and in the event that either party fails to appear at any properly noticed arbitration proceeding, an award may be entered against such party notwithstanding said failure to appear."

The plaintiff correctly claims that in ruling on the defendants' § 52-409 motion, the trial court decided only whether an arbitrator should decide a dispute over the legality of the franchise agreements. The plaintiff contends, therefore, that "the trial court expressed no opinion on, and its ruling had no effect on, the merits of the plaintiff's action." The plaintiff argues that because the trial court's order did not address the merits, it was "an ancillary ruling, independent and severable from the actual lawsuit . . . [which] qualifies as a 'separate and distinct proceeding' under *Curcio*, and is therefore appealable." We disagree.

The fact that the trial court, in ruling on the § 52-409 motion, did not address the merits of the plaintiff's lawsuit does not in itself qualify its order as terminating a "separate and distinct proceeding" under *Curcio*. Cf. *Daginella* v. *Foremost Ins. Co.*, 197 Conn. 26, 31, 495 A.2d 709 (1985) (ruling that directly affects merits of controversy does not terminate "separate and distinct proceeding"). As we have previously explained, a § 52-409 motion seeks a *stay* of the civil proceedings until arbitration has been completed in compliance with the parties' prior agreement. As we stated in *Gores* v. *Rosenthal,* supra, 221: "An order staying proceedings does not terminate the action but merely postpones its disposition. It may be modified or vacated by the court whenever, in the exercise of a sound discretion, it is considered necessary or proper to do so." A stay order is thus an integral step in the underlying lawsuit, subject to the ongoing supervision of the trial court. Id., 220 (General Statutes § 52-409 order to stay action pending arbitration based on "inherent power of the court to regulate proceedings before it"). Accordingly, we are persuaded that a § 52-409 order does not meet the first test for appealability under *State* v. *Curcio*, supra.

The plaintiff also claims that the trial court's § 52-409 order satisfies the second test for appealability of an interlocutory order under *Curcio.* Under that test, to be immediately reviewable, an interlocutory order must "so [conclude] the rights of the parties that further proceedings cannot affect them." *State* v. *Curcio,* supra, 31. The plaintiff, citing *Chrysler* v. *Maiocco,* 209 Conn. 579, 593, 552 A.2d 1207 (1989), contends that CUTPA claims are enforceable only in civil actions and, therefore, are not properly arbitrable. The plaintiff argues that due to the limited reviewability of an arbitrator's decision on an application to vacate under General Statutes § 52-418; see footnote 14, infra; there is "an unacceptable possibility" that the plaintiff's right to litigate its CUTPA claims may be irreparably lost. We are unpersuaded.

First, the plaintiff has pointed to no provision in the franchise agreements, and we have found none, that exempts CUTPA and public policy claims from arbitration under the agreements. As we have stated: "Arbitration is a creature of contract. It is the province of the parties to set the limits of the authority of the arbitrators, and the parties will be bound by the limits they have fixed. . . . The arbitration provision in an agreement is, in effect, a separate and distinct agreement. Courts of law can enforce only such agreements as the parties actually make. . . . No one is under a duty to submit any question to arbitration except to the extent that he has signified his willingness." (Citations omitted.) *Connecticut Union of Telephone Workers* v. *Southern New England Telephone Co.,* 148 Conn. 192, 197, 169 A.2d 646 (1961). By agreeing to the arbitration clause of the franchise agreements; see footnote 10, supra; the plaintiff agreed to submit to arbitration *any* controversy or claim arising out of or relating to the agreements, or any breach thereof,

including any claim that the agreements are illegal or void as against public policy.[11]

Nor has the plaintiff directed our attention to any authority that prohibits the arbitration of CUTPA or public policy claims. The plaintiff simply asserts that CUTPA claims must be decided in civil actions; see *Chrysler* v. *Maiocco,* supra; and since an arbitration is not a civil action; *Fishman* v. *Middlesex Mutual Assurance Co.,* 4 Conn. App. 339, 344, 494 A.2d 606, cert. denied, 197 Conn. 806, 807, 499 A.2d 57 (1985), and cases cited therein; CUTPA claims are not properly arbitrable. Even if the plaintiff's assertion is correct, which we do not decide,[12] the plaintiff may raise the claim that the CUTPA claims are not arbitrable in a motion to vacate the arbitrator's award. See *Schwarzschild* v. *Martin,* supra; cf. *Danbury* v. *International Assn. of Firefighters, I.A.F.F., Local 801,* 221 Conn. 244, 603 A.2d 393 (1992) (trial court granted plaintiff's application to vacate arbitration award made on basis that issue was not arbitrable under General Statutes § 7-473c [a]).[13]

---

[11] We note that pursuant to General Statutes § 52-408, "[a]n agreement in any written contract or in a separate writing executed by the parties to any written contract, to settle by arbitration *any* controversy thereafter arising out of such contract . . . shall be valid, irrevocable and enforceable, except when there exists sufficient cause at law or in equity for the avoidance of written contracts generally." (Emphasis added.)

[12] In *Ebenstein & Ebenstein, P.C.* v. *Smith Thibault Corporation,* 20 Conn. App. 23, 25 n.2, 563 A.2d 1044 (1989), the plaintiff agreed to withdraw its appeal from the trial court's order pursuant to General Statutes § 52-409, staying an action alleging CUTPA violations. Thus, although not an issue in the appeal to the Appellate Court, the trial court's order submitting the CUTPA claims to arbitration was allowed to stand.

[13] We note, moreover, that under General Statutes § 52-415, a party to an arbitration may seek judicial advice on complex questions of law during the course of arbitration proceedings. See *Daginella* v. *Foremost Ins. Co.,* 197 Conn. 26, 33 n.8, 495 A.2d 709 (1985). Section § 52-415 provides: "At any time during an arbitration, upon request of all the parties to the arbitration, the arbitrators or an umpire shall make application to any designated court, or to any designated judge, for a decision on any question

The statutory scheme for the appeal of an arbitration award permits a party to the arbitration to apply to the Superior Court to vacate the award on the basis, inter alia, that the arbitrators have exceeded their powers. General Statutes § 52-418.[14] From the decision of the trial court on the application to vacate, an aggrieved party may appeal to the Appellate Court. General Statutes § 52-423.[15]

In *Schwarzschild* v. *Martin,* supra, the trial court granted the plaintiff's § 52-409 motion to stay a pending civil action initiated by the defendants and ordered the parties to proceed with arbitration. After the arbi-

---

arising in the course of the hearing, provided such parties shall agree in writing that the decision of such court or judge shall be final as to the question determined and that it shall bind the arbitrators in rendering their award. An application under this section may be heard in the manner provided by law for the hearing of written motions at a short calendar session, or otherwise as the court or judge may direct."

[14] General Statutes § 52-418 provides: "(a) Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

"(b) If an award is vacated and the time within which the award is required to be rendered has not expired, the court or judge may direct a rehearing by the arbitrators.

"(c) Any party filing an application pursuant to subsection (a) of this section concerning an arbitration award issued by the state board of mediation and arbitration shall notify said board and the attorney general, in writing, of such filing within five days of the date of filing."

[15] "[General Statutes] Sec. 52-423. APPEAL. An appeal may be taken from an order confirming, vacating, modifying or correcting an award, or from a judgment or decree upon an award, as in ordinary civil actions."

trator entered an award in favor of the plaintiff, the defendants applied to the trial court under § 52-418 to vacate the award. The trial court confirmed the award, pursuant to the plaintiff's application, and the estate of one of the defendants appealed. We addressed the question of whether that defendant, who had effectively been required to arbitrate by the entry of the § 52-409 order, could properly raise the issue of arbitrability in the Superior Court as a basis for vacating the arbitration award. We concluded: "To be consistent with the view that a § 52-409 order requiring arbitration is not a judgment from which an appeal lies . . . the issue of arbitrability necessarily must be reviewable upon application to the Superior Court. To hold otherwise would be to deny appellate review to a claim which we previously precluded from review on the grounds that it was premature." (Citation omitted.) Id., 324. Thus, although we rejected that defendant's claim that it could otherwise raise the issue of arbitrability on a motion to vacate under § 52-418, we held that where a party has *involuntarily* submitted to arbitration pursuant to a § 52-409 order, he may later raise the question of arbitrability on an application to vacate the arbitrator's award.[16] Similarly, in the present case, on an application to vacate the plaintiff may seek review of the trial court's § 52-409 ruling that the plaintiff's CUTPA claims were arbitrable.

We conclude that the trial court's order, made pursuant to § 52-409, did not terminate a separate and distinct proceeding or so conclude the rights of the parties

[16] In the context of the limited certified question before us in this case, we do not address the circumstances in which a party to a General Statutes § 52-409 order can waive its right to raise the question of arbitrability on an application to vacate. Cf. *New Britain* v. *State Board of Mediation & Arbitration,* 178 Conn. 557, 561, 424 A.2d 263 (1979) (plaintiff waived any claim on application to vacate regarding arbitrability of underlying dispute where it did not raise issue until *after* underlying dispute resolved).

that further proceedings cannot affect them. *State* v. *Curcio,* supra. The trial court's order was thus not immediately appealable. This conclusion accords with the policies underlying arbitration. " 'Arbitration affords a contractual remedy with a view toward expediting disputes.' . . . Arbitration is favored because it 'is intended to avoid the formalities, delay, expense and vexation of ordinary litigation.' . . . Prohibiting interlocutory appellate review limits disruption and delay and prevents the arbitration process from being overtaken by litigation." *Daginella* v. *Foremost Ins. Co.,* supra, 33–34.

The judgment of the Appellate Court is affirmed.

In this opinion CALLAHAN, BORDEN and F.X. HENNESSY, Js., concurred.

BERDON, J., dissenting. I believe that we do have jurisdiction to entertain this appeal under the first prong of *State* v. *Curcio,* 191 Conn. 27, 31, 463 A.2d 566 (1983)—that is, "where the order or action terminates a separate and distinct proceeding." The grant or denial of a stay based upon an arbitration clause is a matter wholly separate from the merits of the party's cause. See *Association of Owners* v. *Swinerton & Walberg Co.,* 705 P.2d 28, 34 (Hawaii 1985). To allow an appeal from an order compelling arbitration under General Statutes § 52-410; *Dewart* v. *Northwestern Gas Transmission Co.,* 139 Conn. 512, 514, 95 A.2d 381 (1953); but not from an order that either grants or denies a stay under General Statutes § 52-409 is, at the very least, difficult to reconcile. See W. Moller & W. Horton, Connecticut Practice-Practice Book Annotated, Connecticut Supreme and Appellate Court Rules and Forms (1992) § 4000. Section 52-409 "looks like a mirror image" of § 52-410. C. Tait, Connecticut Appellate Practice and Procedure (1989) § 2.25.

Finally, there are practical reasons why orders under § 52-409 should be appealable. To compel parties to incur costly litigation expenses, either as a result of litigation before an arbitration panel or a court when that is not the required forum, would not make economic sense. If there is a dispute as to whether a matter is arbitrable, then that should be decided by a final and binding judgment.

Accordingly, I would hold that the Appellate Court should not have dismissed the plaintiff's appeal. I respectfully dissent.