[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
The defendants, City of Middletown and the Middletown Board of Education, have filed a Motion for Summary Judgment on all counts of the plaintiff's complaint.
Statement of Facts
The following facts are not disputed. The plaintiff, Constance G. Scandura, worked as a part-time cafeteria worker at Middletown High School for nineteen and one-half years. Ms. Scandura retired from her position on September 5, 1990. Ms. Scandura was a member of Local #466 of Council #4 of the American Federation of State, County, and Municipal Employees AFL-CIO (Union) during her employment and at the time of her retirement. At the time of Ms Scandura's employment, all members of the Union were subject to a collective bargaining agreement (the Agreement) entered into by and between the City of Middletown (the City) and the Union with effective dates July 1, 1988 through and including June 30, 1991.
Since the time of the plaintiff's retirement in September 5, 1990 through approximately December of 1997, Ms. Scandura opted to pay health insurance premiums to the City pursuant to the Article XX, § 8(c) of the Agreement which provides:
The following provisions shall apply to all employees who retire after July 1, 1987 and their dependents:
(c) Regular part-time employees, upon retirement, will be allowed to pick up the applicable retirement medical insurance at their own cost.
In January of 1999, the City offered all retirees the option of being covered under the CIGNA HMO plan at no cost other than the co-pays required under the plan design. Since March 1, 1999, the plaintiff has opted for coverage under CIGNA HMO plan. CT Page 2802
Discussion of the Law and Ruling
Practice Book § 17-49 (formerly § 384) provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Connecticut Bank Trust Co. v. Carriage LaneAssociates, 219 Conn. 772, 780-81, 595 A.2d 334 (1991); Lees v. MiddlesexIns. Co., 219 Conn. 644, 650, 594 A.2d 952 (1991). Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact; D.H.R. Construction Co. v. Donnelly, 180 Conn. 430,434, 429 A.2d 908 (1980); a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact, together with evidence disclosing the existence of such an issue. Practice Book §§ 17-45, 17-46; Burns v. Hartford Hospital,192 Conn. 451, 455, 472 A.2d 1257 (1984). In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. Town Bank Trust Co. v.Benson, 176 Conn. 304, 309, 407 A.2d 971 (1978); Strada v. ConnecticutNewspapers, Inc., 193 Conn. 313, 317, 477 A.2d 1005 (1984). The test is whether a party would be entitled to a directed verdict on the same facts. Batick v. Seymour, 186 Conn. 632, 647, 443 A.2d 471 (1982); NewMilford Savings Bank v. Roina, 38 Conn. App. 240, 243-44, 659 A.2d 1226
(1995).
Summary judgment should only be granted if the pleadings, affidavits and other proof submitted demonstrate that there is no genuine issue as to any material fact. Scinto v. Stam, 224 Conn. 524, 530, cert. denied,114 S.Ct. 176, 126 L.Ed.2d 136 (1993); Connell v. Colwell, 214 Conn. 242,246, 571 A.2d 116 (1991). Summary judgment is "designed to eliminate the delay and expense of litigating an issue where there is no real issue to be tried." Wilson v. City of New Haven, 213 Conn. 277, 279, 567 A.2d 829
(1989).
The plaintiff claims that her retirement insurance coverage during the period of September 5, 1990 through approximately December 1997 should have been governed by the Middletown Code of Ordinances (Code), § 20-37, and not by § 8(c). The Code provision reads, in relevant part:
Any employee retiring from City employment after fifteen years of continuous service shall receive certain benefits with regard to health insurance including that the City shall continue to pay such retired group life insurance and major medical premiums as set forth in said Code CT Page 2803 section.
The defendants argue that Connecticut General Statutes § 7-474, a section of Municipal Employee Relations Act, is clear and unambiguous. The terms of the plaintiff's Agreement with the City supercedes the Code. This statute reads, in relevant part:
(e). . . An agreement between a municipal employer and an employee organization shall be valid and in force under its terms when entered into in accordance with the provisions of sections 7-476 to 7-477, inclusive . . . The procedure for the making of an agreement between the municipal employer and an employee organization provided by said sections shall be the exclusive method for making a valid agreement for municipal employees represented by an employee organization, and any provisions in any general statute, charter or special act to the contrary shall not apply to such agreement.
(f) Where there is a conflict between any agreement reached by a municipal employer and an employee organization . . . and any charter, special act, ordinance, rules or regulations adopted by the municipal employer or its agents . . ., the terms of such agreement shall prevail.
The plaintiff argues that an issue of fact exists as to whether or not she was an employee of the City of Middletown who was bound by the Agreement. However, the plaintiff has not presented any affidavit stating that she was not an employee. The plaintiff has presented no evidence whatsoever. Instead, she attempts to create an issue of fact by reference to the law. She relies on Local #1186 v. Board of Education of the Cityof New Britain, 182 Conn. 93, 438 A.2d 12 (1980), where the Court held that under § 7-474 (d), the school board in question was not subject to the collective bargaining agreement between the city and the union because the city charter gave the school board the exclusive authority to negotiate employment agreements for its employees.
The Local #1186 case has no bearing here. The City of Middletown Charter clearly places the authority of hiring and setting personnel rules of non-certified employees of the Board with the City.
The classified services shall include . . . both full-time and regular part-time employees of the City, including . . . personnel employed by the Board of Education not requiring certification by the State Board of Education.
The Mayor shall also cause to be prepared a set of personnel rules . . . which shall provide, among other things, . . . hours of work, CT Page 2804 vacations, sick leave and other forms of absences . . .
Nothing in this section shall be construed to prevent members of the classified service from entering into a contract with the City for the purpose of establishing working conditions, wages and other conditions pertaining to the continuance and termination of employment.
City of Middletown Charter Chapter XII Personnel Polices Section 1.
Unlike the charter in Local #1186, the plain and unambiguous language in the Middletown City Charter establishes the "sole and exclusive control" requirement for the City to negotiate a collective bargaining agreement with the Union on behalf of all non-certified Board employees. Additionally, in Local #1186 the New Britain Board of Education asserted its authority and separation from the collective bargaining agreement. The plaintiff in this case has not presented such assertions by the Middletown Board.
Furthermore, the plaintiff's argument is contradictory. On one hand she is arguing that she is not bound by the Agreement since she is not a City employee. Yet on the other hand, she is claiming insurance benefits that are only available to City employees under the Ordinance Section 20-37.
The plaintiff next argues that the Agreement relied upon by the defendants does not apply to her September 5, 1990 retirement from the City because the Agreement was in effect for a period of three years from July 1, 1988 to June 30, 1991, and, therefore, had no effect after June 30, 1991. This argument lacks merit. The plaintiff's contractual rights vested with the Agreement in-force at the time of her retirement from the City of Middletown.
The collective bargaining obligation of a union extends to "active employees," not retired employees. Therefore, retired employees are not parties to subsequent collective bargaining agreements negotiated and entered into by their former union. Allied Chem. Alkali Workers ofAm. v. Pittsburgh Plate Glass, Co., 404 U.S. 157, 182, 92 S.Ct. 383,30 L.Ed.2d 341 (1971); Flynn v. Town of Newington, 2 Conn. App. 230, 237,477 A.2d 1028 (1984) ("Retirees are not employees for the purpose of the National Labor Relations Act, and the union which may have represented them while they were active members of the bargaining unit is under no statutory duty to represent them in negotiations with their former employee").
Whether a retiree's medical insurance benefit continues beyond the CT Page 2805 expiration of the collective bargaining agreement depends on the intent of the parties. See Poole v. City of Waterbury, No. CV020170301,2002 Conn. Super. LEXIS 2859, 33 Conn.L.Rptr. 108
(2002). Retiree's rights are contractual. The rights of retirees to any particular health plan are "governed solely by the collective bargaining agreements and the ordinary principles of contract law to which a court looks in construing such agreements." Id. at *20. See also Allied Chemical, 404 U.S. 157, 182, ("Under established contract principles, vested retirement rights may not be altered without the pensioner's consent").
In addition, "[A]lthough ordinarily the question of contract interpretation being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language the determination of what the parties intended by their contractual commitment is a question of law." (Internal quotation marks omitted.)Tallmadge Bros. v. Iroquois Gas Transmission System, L.P., 252 Conn. 479,495, 746 A.2d 1277 (2000); Scovill Mfr. Co. v. Scovill Local 1604,19 Conn. Sup. 67, 69, 109 A.2d 900 (1954). ("The interpretation of the terms of the collective bargaining agreement is a matter of law"); see e.g. U.A.W v. Skinner Engine Co., 188 F.3d 130, No. 98-3461,1999 U.S. App. LEXIS 18488 (3rd Cir. 1999) (the interpretation of a collective bargaining agreement or other plan document is typically a question of law).
In UAW v. Yardman, Inc., 716 F.2d 1476 (6th Cir. 1983), the plaintiffs brought an action against an employer for terminating life and health insurance benefits of retired employees at the expiration of a collective bargaining agreement. The central issue of the case was the interpretation of the collective bargaining agreement which provided:
When the former employee has attained the age of 65 years then;
(1) The Company will provide insurance benefits equal to the active group benefits . . . for the former employee and his spouse.
The defendant alleged that since all active employees' benefits terminate upon plant closure and "since the insurance benefits of former employees are defined as `equal' to active employee benefits, those benefits must be equivalent in all respects including duration." Id.
at 1480. The plaintiffs argued that the parties intended to create lifelong vested insurance benefits for the retirees. See id.
Since the relevant provision of the collective bargaining agreement was ambiguous, the Court looked at other provisions of the agreements for evidence of intent and interpretation that was harmonious with the entire CT Page 2806 document. Relying on the language and the structure of the collective bargaining agreement, the Court held that both parties intended to create vested insurance benefits for the retirees that continued beyond the life of the collective bargaining agreement. See id. at 1481. However, most importantly, the Court reasoned that "retiree benefits were in a sense "status" benefits which, as such, carry with them an inference that they continue so long as the prerequisite status is maintained." Id. 1482. This inference of intent for lifetime vesting was based on the fact that retirees' insurance benefits were a permissive and not a mandatory subject of collective bargaining. Id. Employees were aware that the union and the employers were under no obligation to negotiate for the benefits of retired workers. As such, it was unlikely that such benefits would be left to the contingencies of future negotiations. Id. See also AlliedChem. Alkali Workers of Am. v. Pittsburgh Plate Glass, Co.,404 U.S. 157, 182, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971) (the Court held that the retirees were not employees that could be included in the bargaining unit hence, employers were under no obligation to bargain with unions over benefits for retired workers); Flynn v. Town of Newington,2 Conn. App. 230, 237, 477 A.2d 1028 (1984) (retirees are not employees for the purpose of the National Labor Relations Act, and the union which may have represented them while they were active members of the bargaining unit is under no statutory duty to represent them in negotiations with their former employee).
In Poole v. City of Waterbury, No. CV 020170301,2002 Conn. Super. LEXIS 2859, 33 Conn.L.Rptr. 108 (2002), retired firefighters sued the city of Waterbury for violating a collective bargaining agreement when the city decided to convert the retired firefighter's indemnity style health plan to a managed care health plan. The section in the collective bargaining agreement in question stated ". . . shall continue in full force and effect the benefits for each employee who retires or dies on or after the execution of this agreement." Id. at *20. The court held that the collective bargaining agreement created a vested contractual right to a specific health care plan for life. The court's decision was influenced by the testimony of a benefits administrator. She testified that the city treated a retired firefighter's health plan chosen at the time of his retirement, as a lifetime vested benefit even after subsequent collective bargaining agreements modified other retirees' benefits. See Id. at *22. "[T]he way the City and the current and former union membership jointly interpreted the provisions of these contracts for almost two decades clearly indicates the intent of the parties to create a vested right to the health benefits that each firefighter elected on retirement." Id. at *22-23.
The issue of whether a retiree's insurance benefits should be given a CT Page 2807Yard-Man inference of lifetime vesting need not be addressed in this case. The Agreement's language and its structure as a whole indicate that the parties to the Agreement intended to create insurance benefits for the retirees that continued beyond the life of the Agreement. A contract is to be construed as a whole and all relevant provisions will be considered together. Barnard v. Barnard, 214 Conn. 99, 109-10, 570 A.2d 690
(1990). See also Yardman, 716 F.2d at 1481 (" . . . ambiguity requires that we look to other provisions of the collective bargaining agreement for evidence of intent and an interpretation which is harmonious with the entire document").
The contract language in Section 8 of the Agreement does not specify whether retirees' insurance benefits extend beyond or terminate with the expiration date of the Agreement. However, Section 8 provides detailed information on the health insurance benefits for all employees who retire after July 1, 1987. It specifies the insurance provider and the health care plan. It distinguishes benefits for retirees from regular employment with retirees from regular part-time employment. It provides health insurance riders to all retirees including employees who retired prior to July 1, 1987. It also has contingencies for possible changes.
As the court stated in Poole, "The way the city and the current and former union membership jointly interpreted the provisions of these contracts . . . clearly indicates the intent of the parties to create a vested right to the health benefits . . ." Poole,2002 Conn. Super. LEXIS 2859, at *22. The City provided health insurance to the plaintiff for which she paid pursuant to § 8(c) from the time of the plaintiff's retirement in September 1990 through December 1997.
The plaintiff offers no authority to support her argument that the benefits stated in Sec. 8(c) are no longer valid. No other facts or analysis are presented. In this case the plaintiff retired from her employment with the City of Middletown on September 5, 1990. The collective bargaining agreement which was in effect at the time of the plaintiff's retirement is the proper and controlling agreement in this case.
Section 8(c) of the Agreement is clear, unambiguous, and sets forth the true intent of the parties: to enter into a contract concerning the costs for the City's applicable retirement medical insurance upon the employee's retirement. Specifically, that section provides that the plaintiff, "upon retirement, will be allowed to pick up the applicable retirement medical insurance at [her] own cost." There is a clear conflict between the Agreement and § 20-37 of the Code, which provides that the City will pay medical premiums for a retiring employee. CT Page 2808 Therefore, under § 7-474 (f) the terms of the Agreement prevail.
The plaintiff cannot prevail on her claim of unjust enrichment because there is an enforceable express contract between the parties. Rosick v.Equipment Maintenance Service, Inc., 33 Conn. App. 25, 27,632 A.2d 1134 (1993). Additionally, the plaintiff has presented no proof of any life insurance premiums she paid to the City. While the defendant has presented the affidavit of Dawn Rojas, the City risk manager, which avers that Ms. Scandura did not pay life insurance premiums to the City or Board of Education at any time subsequent to her retirement with the City. Mere assertions of fact are insufficient to establish the existence of an issue of material fact and, therefore, cannot refute evidence properly presented to the court in support of a motion for summary judgment. Miller v. United Technologies Corp., 233 Conn. 732, 745,660 A.2d 810 (1995).
The plaintiff has failed to demonstrate the existence of any material facts or establish any principle of law that might preclude this court from entering summary judgment in favor of the defendants. Section 8 of the Agreement governs the plaintiff's health insurance coverage. Under Connecticut General Statutes § 7-474 the terms of the plaintiff's Agreement with the City supercede the inconsistent provisions of the Code § 20-37 relied on by the plaintiff. Since there was an enforceable Agreement the plaintiff's unjust enrichment claim is not valid.
For the reasons set forth above, summary judgment may enter in favor of the defendants.
 By the court, Aurigemma, J.
CT Page 2809